UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ELIZABETH SEWELL, ET AL. | CIVIL ACTION NO. |
| V. | 15-3117 c/w 15-6276, 16-2326, 16-2328, 16-3120, |
| SEWERAGE & WATER BOARD OF NEW ORLEANS | 16-4233, 16-4248, 16-12368 |

*This Order Relates to All Cases*

## ORDER AND REASONS

Before the Court are three motions for summary judgment (Rec. Docs. 241, 246, & 252), filed by contractors B&K Construction Company, LLC ("B&K"), Boh Bros. Construction Company, LLC ("Boh Bros."), and Cajun Constructors, LLC ("Cajun") (collectively, "Contractors"), as third-party defendants in the captioned matter. The motions address, primarily, the doctrine of government contractor immunity, and are opposed by the defendant/third-party plaintiff, Sewerage and Water Board of New Orleans ("SWB"). (*See* Rec. Docs. 272-275). The Contractors have filed memoranda in reply (Rec. Docs. 293, 295, & 299), and, after the Court entertained oral argument on September 28, 2016, all of the parties have submitted supplemental briefs. (Rec. Docs. 354, 363, 365, & 366). Now, having reviewed the entirety of the parties' submissions, the record, and the applicable law, the Court grants the motions on the basis of federal contractor immunity for the reasons stated herein.

**I. BACKGROUND**

By now, those familiar with this litigation are well versed in the history of the Southeast Louisiana ("SELA") Drainage Project, a federally funded undertaking co-sponsored by SWB and the United States Army Corps of Engineers ("USACE"). The Project is intended to improve

drainage and prevent flooding in the area, and has been implemented in phases. Seven phases of the Project are implicated in the instant action, which consists of eight consolidated lawsuits brought in state court[1] by owners of homes and businesses in Uptown New Orleans, near SELA Project construction. The seven phases are either complete, nearing completion or ongoing. Plaintiffs in each lawsuit have alleged damage and takings arising from construction, particularly the installment of box culverts beneath the surface.  In seven suits, the plaintiffs sued only SWB. In the eighth, the single plaintiff sued one of the Contractors, as well. In turn, SWB has asserted cross claims and third party claims against the Contractors constructing the seven phases. Once joined in the fray, the Contractors removed the lawsuits pursuant to the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1).  To date, this Court has dismissed SWB's claims against the Contractors for inverse condemnation, breach of contract, negligence, and legal indemnification premised on non-strict liability principles.

The Court now resumes its consideration of federal contractor immunity, which the Contractors' instant summary judgment motions raise as a defense to all claims.  At the time of the September 28th oral argument, the Court believed the Contractors had established their immunity defense, at least in part, on six of the phases and, in whole, on the seventh phase. Rather than enter judgment in their favor, however, the Court decided, in the interest justice and fairness, to honor SWB's request for more time to conduct discovery, awarding it an additional thirty (30) days to do so. That time having passed, and with supplemental briefing from the parties before it, the Court is prepared to rule forthrightly.

---

[1] Civil District Court, Parish of Orleans, State of Louisiana.

**II. LEGAL STANDARD – MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a district court shall grant summary judgment "if the movant shows that there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). A fact is material if it "might affect the outcome of the suit under governing law." *Id*.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the movant may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986); *see also Lavespere v. Liberty Mut. Ins. Co.*, 910 F.2d 167, 178 (5th Cir. 1990). Once the moving party carries its burden pursuant to Rule 56(a), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S. Ct. 2553; *see also Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *Auguster v. Vermillion Parish School Bd.*, 249 F.3d 400, 402 (5th Cir. 2001).

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana,* 294 F.3d 755, 758 (5th Cir. 2002), and

draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare System, L.L.C.,* 277 F.3d 757, 764 (2001). Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (citations omitted). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Id.* (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. *See* Fed. R. Civ. P. 56(c)(3) ("court need consider only the cited materials"); *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."). Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." *Little,* 37 F.3d at 1075. Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir. 2002).

**III. LAW AND ANALYSIS**

First established by the Supreme Court of the United States in *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18 (1940), and expanded in *Boyle v. United Tech. Corp.*, 487 U.S. 500 (1988), the government contractor defense shields contractors hired by the government from liability where the performance of a discretionary function is at issue. *Kerstetter v. Pacific Scientific Co.*, 210 F.3d 431, 435 (5th Cir. 2000). For the government contractor defense to apply, (1) the government must have approved reasonably precise specifications; (2) the equipment or work must have conformed to those specifications; and (3) the contractor must have warned of any dangers that were known to the contractor but not to the government. *See Trevino v. Gen. Dynamics Corp.*, 865 F.2d 1474, 1479 (5th Cir. 1989) (citing *Boyle*, 487 U.S. 500). Known as the *Boyle* test, its three prongs make up the only analysis necessary to determine the application and scope of government contractor immunity. *In re Katrina Canal Breaches Litig.*, 620 F.3d 455, 461 (5th Cir. 2010).

The first prong of the *Boyle* test clearly has two requirements – reasonably precise specifications *and* government approval – which together are intended to "assure that that the design feature in question was considered by a Government officer, and not merely by the contractor itself." *Boyle*, 487 U.S. at 512. They must be satisfied for each feature of the project brought to issue by a claim. *In re Katrina*, 620 F.3d at 461 ("Reasonably precise specifications for one aspect of a large project do not create an umbrella of protection for an entire project."). Reasonable precision requires "that the discretion over significant details and all critical design choices be exercised by the government." *Trevino*, 865 F.2d at 1481; *see also Kerstetter*, 210 F.3d at 438 (Specifications are reasonably precise "as long as the specifications address, in reasonable detail, the product design feature, alleged to be defective."). The focus of this inquiry is not on

5

who designed the offending features of the project, but rather the detail of the specifications before the government for approval. *See In re Aircraft Crash Litigation Frederick, Maryland*, 752 F.Supp. 1326, 1341-42 (S.D.Ohio 1990) *aff'd*, *Darling v. Boeing Co.*, 935 F.2d 269 (6th Cir. 1991). Likewise, "[t]he government need not prepare the specifications to be considered to have approved them." *Kersetter v. Pacific Scientific Co.*, 210 F.3d 431, 435 (5th Cir. 2000) (citing *Trevino v. General Dynamics*, 865 F.2d 1474, 1480 (5th Cir. 1989). Government approval simply requires meaningful, substantive review of the specifications. *See Trevino*, 865 F.2d at 1480, 1486; *Stout v. Borg-Warner Corp.*, 933 F.2d 331, 335-36 (5th Cir. 1991) (explaining the government's substantive review of specifications is sufficient; mere rubber stamping is not).

At the hearing on the instant motions, the Court found that the Contractors had shown the plans and specifications, which were uniformly detailed across the Project, to be reasonably precise for each feature, or activity, of construction implicated by the claims. The relevant features include: (1) pile driving; (2) temporary and permanent retaining structures; (3) dewatering; (4) jet grouting; (5) concrete breakage and debris removal; (6) excavating and earth moving; (7) emissions of noise, dust, and vibrations, generally; and (8) traffic. The record evidence reveals that USACE considered each offending feature and had in place specifications that effectively removed all critical design choices from the Contractors' discretion. For example, the piles were to be driven in a predetermined location and manner, and temporary retaining structures and dewatering systems were to be built pursuant to detailed designs, requested and independently approved by USACE. Less detailed, yet still reasonably precise specifications governed, either directly or indirectly (in the case of concrete breakage), more rudimentary or general construction features. These specifications included, *inter alia*, actionable monitoring protocols for vibrations and sound,

generally; mandatory use of sound muffling devices on construction equipment, implementation of dust prevention techniques, and application of traffic mitigation measures.

In addition to being reasonably precise, the Rule 56 record evidence demonstrates that USACE meaningfully reviewed and approved the specifications prior to construction. This process typically began with a years-long design period, during which design firms retained by the government developed hundreds of pages of plans and specifications, for each phase. The plans and specifications went through multiple stages of government vetting, including, but often not limited to, USACE's incremental Buildability, Constructability, Operability and Environmental (BCOE) reviews. Following the initial design period, the government continued its scrutiny, meaningfully reviewing all changes and modifications to the approved plans and specifications, proposed means and methods of construction, and, on the rare occasion, new designs. Ultimately, when it came to actual construction, the Contractors proceeded in hand with detailed instructions, substantively blessed by USACE. Clearly, USACE was the agent of decision on all critical features of the work, as demonstrated by its level of involvement. The Court, therefore, reaffirms its previous finding that the relevant plans and specifications satisfy the *Boyle* test.

The second prong of the *Boyle* test requires a government contractor to have performed the work in accordance with the approved specifications. Like the first prong, this conformity requirement again "serve[s] to locate the exercise of discretion in the government." *Trevino*, 865 F.2d at 1481. Conformity may be shown by evidence that "the government supervised and controlled the implementation of [the government approved reasonably precise] specifications," *Levy v. Phillips and Jordan, Inc.*, No. 08-5065, 2009 WL 2922057, *2 (E.D.La. Sept. 9, 2009), or that it accepted and used the work following completion. *See Kersetter v. Pacific Scientific Co.*, 210 F.3d 431, 436 (5th Cir. 2000). Particularly in the absence of conflicting evidence, the

government's written acceptance of a contractor's work constitutes compelling proof of conformity. *See, e.g., Miller v. Diamond Shamrock Co.*, 275 F.3d 414, 420 (5th Cir. 2001) (and cases cited therein). A breach of "some general admonition against an unwanted condition" does not negate a showing of a contractor's conformity with precise specifications. *Kleeman v. McDonnell Douglas Corp.*, 890 F.2d 698, 703 (5th Cir. 1993) (quoting *Harduval v. General Dynamic Corp.*, 878 F.2d 1311, 1319 n.3 (11th. Cir. 1989) (precatory contract terms "represent little more than hopes of participants that the project on which they are about to embark will turn out well").

Here, the Contractors have shown USACE's oversight to have been extensive and steady. In addition to performing interim performance evaluations and holding monthly meetings with the Contractors, USACE maintained a daily presence on site, staffing each phase with Quality Assurance ("QA") representatives tasked with inspecting the work each day to ensure conformity with plans and specifications. USACE also required the Contractors to have their own Quality Control ("QC") officers, who regularly reported to USACE on compliance. By keeping such a close eye on the construction, USACE's monitoring efforts help assuage concern that the Contractors may have substituted their discretion in place of the reasonably precise specifications.

Under precedent set by the Fifth Circuit in *Kersetter*, USACE's close supervision is persuasive evidence of conformity. Nevertheless, the Contractors have gone further by showing proof of acceptance, including USACE's periodic payments to the Contractors for completion of work and its use of the culverts as constructed, further indicating the government's satisfaction. The cumulative effect of this evidence bolsters the Contractors' position that, to date, they have performed the work as ordered, in the manner contemplated by the government (USACE).

Rather than substantively address the second prong of *Boyle* and nonconformity, SWB contends that it would be premature for the Court to evaluate the performance of the Contractors. SWB cites in support the declaration of USACE's Linda C. LaBure, which outlines the agency's Standard Operating Procedure ("SOP") for crediting payments by non-federal sponsors for damage to real property. Essentially, the process does not begin until the Project's non-federal sponsor submits a complete credit claim package to USACE, who then proceeds to determine whether the alleged damage resulted from negligence of a contractor. Until that causal determination is made in this case, SWB argues that USACE has not exonerated the Contractors from fault, and all other evidence of conformity relied upon by the Contractors is insufficient to satisfy *Boyle*.

The Court disagrees. The government contractor defense is not reliant on, or even concerned with, USACE's final determination of cause for the damage alleged. The relevant inquiry under *Boyle* is straightforward – did the Contractors comply with the reasonably precise specifications approved by USACE? Certainly, in the context of a construction project, the manner of construction is often as important as the final product, if not more. In this case, the Contractors' means and methods were substantively approved and closely monitored by USACE. The evidence establishes as much. To require that the Contractors wait to assert their defense until the lifting of bureaucratic red tape would erode their immunity from suit as agents of the federal government. Claims are before the Court now, for damages present. Time is no excuse for SWB's inability to demonstrate noncompliance.

The final prong of the *Boyle* test requires a contractor to have been "unaware of reasons not known to the government that would make the implementation of specifications unsafe or unreasonable." *Levy*, 2009 WL 2922057 at *2. In this case, the government knew of the risks associated with vibration-causing construction activities and water table manipulation, such as

cracking in nearby structures and subsidence of the surface. Not only are these obvious risks inherent to the installation of underground box culverts in an urban area, USACE has admitted, through John Foggarty, that the agency expected the surrounding areas to experience vibratory and noise impacts, as well as inconveniences stemming from dust, noise, restricted access, and traffic. In fact, USACE contemplated a "zone of impact," within which it was considered more likely than not that damage could occur, regardless of whether the Contractors performed their work in accordance to the plans and specifications provided to them. Experience was on USACE's side: As early as 1999, construction of prior phases of the SELA Project resulted in a wave of litigation similar to that before the Court today.[2] Accordingly, the Court finds USACE chargeable with general knowledge that the construction, as planned, had potential to cause damage from vibrations and surface movements, in particular. Moreover, SWB has not put before the Court any evidence that the Contractors failed to report a dangerous condition, either in nature or degree, that was unforeseen by USACE. Therefore, the Court concludes that the Contractors have established the last prong of *Boyle* and, thus, prevailed on the defense of government contractor immunity.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the Motions for Summary Judgment (Rec. Docs. 241, 246, & 252) are **GRANTED** on the basis of federal contractor immunity. All claims pending against Boh Bros., B&K, and Cajun Constructors are hereby **DISMISSED WITH PREJUDICE**. In light of this

---

[2] *See, e.g., Holzenthal v. Sewerage & Water Bd. of New Orleans*, 2006-0796 (La. App. 4 Cir. 1/10/07) 950 So.2d 55; *Shimon v. Sewerage & Water Bd. of New Orleans, et al.*, Civ. A. No. 05-1392 (E.D.La.); and *Mossy Motors, Inc. v. Sewerage & Water Bd. of New Orleans*, 98-0495 (La. App. 4 Cir. 5/12/99), 753 So.2d 269.

ruling, the Court has reason to question its continued maintenance of jurisdiction over the consolidated cases. Accordingly,

**IT IS FURTHER ORDERED** that the remaining parties brief the issue of this Court's current subject matter jurisdiction. Memoranda not to exceed twelve (12) pages (one for Plaintiffs, another for SWB) shall be submitted within fourteen (14) days of the date of this Order.

New Orleans, Louisiana, this 20th day of December 2016.

_____
KURT D. ENGELHARDT
UNITED STATES DISTRICT JUDGE